IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| DAVID VITUMUKIZA, | CASE NO. 1:24-cv-1102 |
| Petitioner, | DISTRICT JUDGE J. PHILIP CALABRESE |
| vs. | |
| WARDEN TOM WATSON, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner David Vitumukiza filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Doc. 1, and an Amended Petition, Doc. 8. Vitumukiza is in custody at the North Central Correctional Complex due to a journal entry of sentence in the case *State v. Vitumukiza*, Cuyahoga County Court of Common Pleas, Case No. CR-20-651784-A. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed as time-barred.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Vitumukiza's conviction as follows:

> {¶2} On July 4, 2020, a 24-count indictment was issued against Vitumukiza, his wife, and his friend for engaging in sexual conduct with an unconscious female victim. The graphic encounter was videorecorded, photographed, and shared on multiple social media platforms and with coworkers and family members who shared them with the victim.
>
> {¶3} Twenty-four-year-old Vitumukiza, who moved to the United States after completing the sixth grade in Uganda, utilized a Swahili interpreter for the criminal proceedings. On March 30, 2021, pursuant to a plea agreement Vitumukiza entered a guilty plea to
>
> > Rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree;
> >
> > Gross Sexual Imposition, R.C. 2907.05(A)(5), a felony of the fourth degree;
> >
> > Pandering Obscenity, R.C. 2907.32(A)(1), a felony of the fifth degree;
> >
> > Felonious Assault with a sexual motivation specification, R.C. 2903.11(A)(1), R.C. 2941.147, a felony of the second degree;
> >
> > Kidnapping, R.C. 2905.01(A)(4), a felony of the first degree; and

> Tampering with Evidence, R.C. 2921.12(A)(1), a felony of the third degree.
>
> The plea agreement included a no-contact order and provided that the offenses were not allied offenses of similar import that allowed the trial court to impose consecutive sentences at its discretion. The agreement also included a Tier III sexual offender classification and immigration notification.
>
> {¶4} On June 30, 2021, Vitumukiza was sentenced to
>
> > Rape, 10 years minimum term, 15 years maximum term;
> >
> > Gross Sexual Imposition, 18 months;
> >
> > Pandering Obscenity, 12 months;
> >
> > Felonious Assault with a sexual motivation specification, 8 years;
> >
> > Kidnapping, 8 years; and
> >
> > Tampering with Evidence, 36 months.
>
> {¶5} The trial court ordered that the sentences for rape and felonious assault run consecutive to the remaining counts that run concurrent for an aggregate sentence of 18 years. Vitumukiza was also informed of sexual offender classification, postrelease control, fines, and costs.

*State v. Vitumukiza*, Case No. 110633, 2022 WL 1043499, at *1 (Ohio Ct. App. April 7, 2022).

3

**Procedural background**

*Direct appeal*

Vitumukiza, through new counsel, appealed to the Ohio court of appeals.

Doc. 7-1, at 19 (Exhibit 6).[1] In his brief, he raised the following assignments of

error:[2]

> 1.  The trial court failed to substantially comply with Criminal Rule 11 by failing to advise appellant on the effect of a guilty plea prior to accepting the plea.
>
> 2.  The trial court erred in imposing consecutive sentences.
>
> 3.  The trial court erred in imposing an indefinite term as the Reagan Tokes Law violates appellant's constitutional right to due process under the Fourteenth Amendment to the United States Constitution and Article I Section Ten of the Ohio Constitution.
>
> 4.  Appellant's convictions are against the manifest weight of the evidence.

Doc. 7-1, at 35. On April 7, 2022, the Ohio court of appeals affirmed the trial

court's judgment, but remanded for the trial court to issue a nunc pro tunc

entry incorporating into the entry its consecutive-sentences findings. *Id*. at 93–

105 (Exhibit 9).

Vitumukiza did not appeal.

---

[1]    In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

[2]    In this report and recommendation, Vitumukiza's grounds for relief are reproduced as written.

*Nunc pro tunc entry*

On June 6, 2022, the trial court issued a nunc pro tunc entry incorporating into the entry its consecutive-sentences findings. Doc. 7-1, at 106−07 (Exhibit 10).

*Ohio Rule 26(B) Applications to reopen*

On November 13, 2023, Vitumukiza filed under Ohio Appellate Rule 26(B) a pro se application to reopen direct appeal. Doc. 7-1, at 108 (Exhibit 11). Vitumukiza argued that appellate counsel was ineffective for failing to raise on direct appeal the following assignment of error:[3]

> The trial court erred in accepting Mr. Vitiumukiza's guilty plea because the lack of effective representation rendered his plea involuntary.

*Id.* at 111.

On December 12, 2023, Vitumukiza filed another Rule 26(B) Application to reopen raising the same ground as the first application. Doc. 7-1, at 114, 117 (Exhibit 12). On December 29, 2023, the Ohio court of appeals denied Vitumukiza's applications because "they were filed well outside the 90-day period." *Id.* at 131, 134−35 (Exhibit 14). The court added that Vitumukiza hadn't "acknowledge[d] the fact that they are untimely and [had] not offer[ed] any arguments going to good cause to excuse the delay." *Id.* at 135.

---

[3]   A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

On February 12, 2024, Vitumukiza appealed to the Ohio Supreme Court. Doc. 7-1, at 136 (Exhibit 15). In his memorandum in support of jurisdiction, he raised the following proposition of law:

> The trial court erred in accepting appellant's guilty plea because the lack of effective representation rendered his plea involuntary.

*Id.* at 140 (Exhibit 16). On April 2, 2024, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Vitumukiza's appeal. *Id.* at 155 (Exhibit 17).

### Federal habeas corpus petition

Vitumukiza states that on June 12, 2024, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[4] Doc. 1, at 15. He raises the following grounds for relief:

> **Ground one**: Defense counsel's action and omissions at petitioner's plea hearing deprived him of the effective assistance of counsel as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the.
>
> *Supporting facts*: When the crime took place Petitioner was unconscious or sleep.
>
> **Ground two**: Defense counsel's action and omissions in failing to argue the defense of mere presence deprived him of the effective assistance of counsel as guaranteed by the Fifth, Sixth Eighth, and.
>
> *Supporting facts*: Mere presence at the scene of a crime in an unconscious or sleep.

---

[4]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

6

Doc. 1, at 5–7. In his amended petition, Vitumukiza adds the following four grounds:[5]

> **Ground three**: The trial court failed to substantially comply with Criminal Rule 11 by failing to advise petitioner on the effect of a guilty plea prior to accepting the plea.
>
> *Supporting facts*: The plea colloquy is completely devoid of any comment or advice on what it means to plead guilty. The defendant is from a different country and has never been incarcerated before. More importantly, the defendant told the probation officials during the Presentence Report interview that he did not have sex with B.U. This tends to demonstrate that the defendant clearly did'nt understand the effect of pleading guilty and resulted in an unknowing, involuntary plea.
>
> **Ground four:** The trial court erred in imposing consecutive sentences.
>
> *Supporting facts*: Here, the trial court erred when imposing consecutive sentences by failing to make the requisite findings in support of the imposition of consecutive sentences at the sentencing hearing and incorporating those findings into the journal entry.
>
> **Ground five:** The trial court erred in imposing an indefinite term as the Reagan Tokes Law violates petitioner's constitutional rights to Due Process under the 14th Amendment to the US Constitution and Article I, Section Ten of the Ohio Constitution.

---

[5]     In his amended petition, Vitumukiza identifies his four new grounds as grounds one through four. Doc. 8, at 2−4. To avoid confusing these four grounds with the two grounds in Vitumukiza's initial petition, I have renumbered Vitumukiza's amended-petition grounds in sequential order.

*Supporting facts*: The indefinite sentence handed down by the trial court pursuant to the Reagan Tokes Law is unconstitutional whereas it allows the executive branch of the government (the ODRC) to unilaterally, without input from the trial court, to increase the minimum sentence that the trial court imposes. This process allows unelected ODRC officials to second guess the sound judgment of a trial court w/out the need to have a full hearing or to afford the defendant a full hearing.

**Ground six**: Appellate Counsel was ineffective for failing to raise trial counsel's ineffectiveness.

*Supporting facts*: The appellate counsel was ineffective for not arguing on appeal that the trial court erred in accepting the defendants guilty plea due to the inadequate representation the defendant received whereas the trial court knew that the defendant denied committing rape to the PSI (presentence investigation officials) and the defendant had never been in trouble before and was from another country and spoke another language, and had a limited education.

Doc. 8, at 2–4. The Warden filed a Return of Writ, Doc. 7, and a Supplemental Return of Writ, Doc. 12. Vitumukiza filed a Traverse to the Return, Doc. 10, and a Traverse to the Supplemental Return, Doc. 13.

**Law and analysis**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, provides a one-year limitations period in a habeas

8

action brought by a person in custody from a state court judgment. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations is tolled for any period in which a properly filed petition for post-conviction relief is pending before the state courts. 28 U.S.C. § 2244(d)(2); *see Wall v. Kholi*, 562 U.S. 545, 550–51 (2011). To toll the running of the statute of limitations, however, a post-conviction motion must be properly filed. A post-conviction application is not properly filed unless "'its delivery and acceptance [follow] the applicable laws and rules governing filings'—including any state-imposed time limits." *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). Under this "understanding, a [post-conviction] petition filed after a time limit, and which does not fit within any exceptions

to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception." *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Moreover, the statutory tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).

Under section 2244(d)(1)(A),[6] Vitumukiza's case became final forty-five days after the Ohio court of appeals affirmed the trial court's judgment on direct review, when Vitumukiza's time to appeal to the Ohio Supreme Court expired. *See Fuller v. Thomas*, 110 F. App'x 496, 497 (6th Cir. 2004) (when a petitioner doesn't appeal to the Ohio Supreme Court, the limitations period starts to run 45 days after the Ohio court of appeals' decision); *see* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(i). The Ohio court of appeals affirmed the trial court's judgment on April 7, 2022. Doc. 7-1, at 93. So the limitations period began running on May 23, 2022, after the 45-day window to appeal closed, and expired a year later on May 23, 2023.

Vitumukiza's November and December 2023 Ohio Appellate Rule 26(B) applications to reopen didn't restart the limitations period because a Rule 26(B) application to reopen is a state collateral proceeding, not part of direct

---

[6]    Vitumukiza hasn't alleged that subparagraphs (B), (C), or (D) apply to this case and none would appear to apply to this case.

review. *See Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005); *see Morgan v. Eads*, 818 N.E.2d 1157 (Ohio 2004).

Nor do Vitumukiza's Rule 26(B) applications toll the limitations period. This is so for two reasons. First, the Ohio court of appeals denied as untimely both applications. Doc. 7-1, at 134−35; *see Jones v. May*, No. 24-3488, 2024 WL 5002431, at *2 (6th Cir. Oct. 10, 2024) (an untimely Rule 26(B) application to reopen a direct appeal is not "'properly filed' under state law and therefore d[oes] not toll the statute of limitations") (citing *Pace*, 544 U.S. at 414, 417). Second, Vitumukiza filed his Rule 26(B) applications after the limitations period expired. *See Vroman*, 346 F.3d at 602 ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.").

The trial court's June 7, 2022 nunc pro tunc entry does not entitle Vitumukiza to a later start-date. When a trial court's nunc pro tunc entry changes the petitioner's sentence to the petitioner's detriment, the nunc pro tunc entry will re-start the limitations period. *See Crangle v. Kelly*, 838 F.3d 673, 678–79 (6th Cir. 2016). But a "nunc pro tunc order [which] merely correct[s] a record to accurately reflect the court's actions … would not be a new sentence that resets the statute of limitations under § 2244(d)(1)(A)." *Id.* at 680. Here, the trial court's nunc pro tunc entry corrected an error—the trial court at the sentencing hearing stated the reasons in support of its consecutive sentence finding, *see* Doc. 7-2, at 41–43, but "failed to incorporate the …

11

findings into the sentencing entry," *Vitumukiza*, 2022 WL 1043499, at *5. Because the nunc pro tunc entry didn't change Vitumukiza's sentence, Doc. 7-1, at 106−07, it didn't re-start the limitations period under section 2244(d)(1)(A), *see Crangle*, 838 F.3d at 680.

Even if it had restarted the limitations period, Vitumukiza's petition would still be time-barred. Vitumukiza had 30 days to appeal the June 7, 2022 nunc pro tunc entry. *See* Ohio App. R. 4(a)(1). He didn't appeal, so the limitations period would have started to run on July 8, 2022, after the time to appeal passed, and would have expired a year later, on July 8, 2023. For the same reasons stated above, Vitumukiza's untimely Rule 26(B) applications to reopen would not have restarted or tolled the limitations period. So even using the nunc pro tunc entry as the start-date, Vitumukiza's June 2024 petition would still be about a year late.

Vitumukiza may also be entitled to "equitable tolling" if he has been "pursuing his rights diligently" and "some extraordinary circumstance" prevented him from timely filing his habeas petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). Vitumukiza bears the burden of "persuading the court" that he is entitled to equitable tolling. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Vitumukiza argues that he "was born and raised in Africa and only had

been living in America for a short time before he caught the instant case."[7] Doc. 10 at 2; Doc. 13 at 2. He says that he doesn't speak or "effectively" "comprehend" English and needed to rely on other inmates "to assist … and advise him" and that these inmates made mistakes and mis-advised him. Doc. 13, at 2–3. Nevertheless:

> where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations. An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims.

*Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Here, Vitumukiza had an interpreter during his guilty plea. Doc. 7-2 at 6; *see Cobas*, 306 F.3d at 444. Review of the transcript shows that Vitumukiza at times communicated with the court without waiting for the interpreter to interpret, *see, e.g.*, Doc. 7-2 at 15–16, belying his assertion that he doesn't speak or effectively comprehend English. Vitumukiza's state-court filings show that even with help drafting his filings, Vitumukiza "was clearly able to communicate with the person who helped him." *See Cobas*, 306 F.3d at 444; Doc. 7-1, at 112–13 (Vitumukiza's Rule 26(B) application to reopen in which he argues that his attorney "told him that if he did not want to be deported that he needed to say yes to everything

---

[7]    Vitumukiza "moved to the United States after completing the sixth grade in Uganda" and was 24 years old when he pleaded guilty. *Vitumukiza*, 2022 WL 1043499, at *1; Doc. 7-2 at 37.

the judge said," debates specifics about the crime and evidence, and claims that he was innocent."). Vitumukiza hasn't shown that he is entitled to equitable tolling. *See Griffin*, 308 F.3d at 653; *Cobas*, 306 F.3d at 444.

Finally, a claim of "actual innocence" may overcome the one-year statute of limitations if the petitioner "demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495–96 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court underscored that "the miscarriage of justice exception ... applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schulp*, 513 U.S. at 329).

Vitumukiza claims that he is innocent, Doc. 10 at 2, Doc. 13 at 3, but he hasn't identified "'new reliable evidence … that was not presented at trial.'" *See Schlup*, 513 U.S. at 324. And his allegations don't illustrate factual innocence. He submits that he told probation officers "that he did not have sex

14

with the victim." Doc. 13, at 4. *See also* Doc. 7-1, at 37 (brief on direct appeal stating that Vitumukiza "was interviewed in connection with the assault where he admitted to touching [the victim's] vagina but denied having sex with her."); Doc. 7-2 at 41. But Vitumukiza misunderstands the definition of rape. As the Ohio court of appeals explained:

> Rape under R.C. 2907.02(A)(1)(c) involves sexual conduct with an individual who is substantially impaired and unable to resist. Sexual conduct "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, *the insertion, however slight, of any part of the body* or any instrument, apparatus, or other object *into the vaginal* or anal opening of another. *Penetration, however slight, is sufficient to complete vaginal or anal intercourse.*" R.C. 2907.01(A).

*Vitumukiza*, 2022 WL 1043499, at *2, n1 (emphasis added). Vitumukiza hasn't shown a fundamental miscarriage of justice to overcome the time-bar. *See Patterson*, 455 F. App'x at 609.

## Conclusion

For the reasons set forth above, I recommend that Vitumukiza's Petition be dismissed.

Dated: December 30, 2024

        */s/ James E. Grimes Jr.*
        James E. Grimes Jr.
        U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).